United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 21, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-32810 (CML)** |
| **Polaris Operating, LLC,** *et al.,* | § | |
| | § | **Chapter 11** |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |

**ORDER (I) APPROVING BIDDING
PROCEDURES; (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III)
APPROVING STALKING HORSE PROTECTIONS; (IV) SCHEDULING BID
DEADLINE, AUCTION DATE, AND SALE HEARING DATE; (V) APPROVING FORM
OF NOTICE THEREOF; (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I)
AUTHORIZING THE DEBTORS TO SELL THEIR ASSETS; AND (II) AUTHORIZING
THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Sale Motion</u>")[2] of Polaris Operating, LLC, *et al.* (the "<u>Debtors</u>") in

the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>"), seeking entry of an

order (this "<u>Bidding Procedures Order</u>") pursuant to sections 105(a), 363 and 365 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended from time to time, the "<u>Bankruptcy Rules</u>"),

and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District

of Texas (the "<u>Bankruptcy Local Rules</u>"), for the entry of orders (i)(a) approving procedures in

connection with the sale of substantially all of the Debtors' assets; (b) approving the Stalking Horse

Protections; (c) approving procedures related to the assumption and assignment of certain of the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: CCCB Energy Partners, LLC (5918); Polaris Operating, LLC (9852); NAP I, LLC (6767); and Cottonwood Gas Gathering, LLC (8983).  The Debtors' service address is: 5944 Luther Lane, Suite 400, Dallas, TX 75225.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures attached as Exhibit 1 to this Bidding Procedures Order, as applicable.

Debtors' executory contracts and unexpired leases; (d) scheduling an Auction and Sale Hearing and approving the form and manner of notice thereof; and (e) granting related relief; and (ii) entry of an order (the "Sale Order") after the Sale Hearing (a) authorizing the sale of the Purchased Assets to the Successful Bidder (which may be a Stalking Horse Purchaser), free and clear of Encumbrances, except as provided by the relevant Asset Purchase Agreement (or Stalking Horse Agreement); (b) approving the assumption and assignment of the Assumed Executory Contracts; and (c) granting related relief; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Sale Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Sale Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Sale Motion (the "Bidding Procedures Hearing"); and upon consideration of the record of the Bidding Procedures Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, therefore;

**IT IS FOUND AND DETERMINED THAT:**

A.     At the Bidding Procedures Hearing and in the Sale Motion, the Debtors articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief set forth in this Bidding Procedures Order relating to the bidding process,

including approval of (1) the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), (2) the Stalking Horse Protections, (3) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Executory Contracts (the "Cure Amounts") so as to permit the assumption of the Assumed Executory Contracts under section 365 of the Bankruptcy Code and their assignment to the Successful Bidder (or Stalking Horse Purchaser), and (4) the forms of the Sale Notice and Cure Notice.

B.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Sale Motion, including approval of one or more Sale(s) and the transfer of the Purchased Assets and assignment of Assumed Executory Contracts to the Successful Bidder(s) (or Stalking Horse Purchaser(s)) free and clear of all Encumbrances and other interests pursuant to sections 363(f) and 365 of the Bankruptcy Code.

C.      The Stalking Horse Protections (if any Stalking Horse Purchaser is designated for the Masterson Assets and/or the WGU Waterflood Assets), as limited by the approval granted in this Bidding Procedures Order, to be paid to a Stalking Horse Purchaser are:  (1) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by any Stalking Horse Purchaser; (3) fair, reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments and accommodations of the Stalking Horse Purchaser that have been made for the benefit of the Debtors' estates, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Purchaser; and (4) necessary to induce the Stalking Horse Purchaser to pursue the Sale and to continue to be bound by the Stalking Horse Agreement.

Accordingly, the Stalking Horse Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

D.      The Bidding Procedures substantially in the form attached hereto as **<u>Exhibit 1</u>** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale(s) of the Purchased Assets.

E.      The Debtors' proposed Sale Notice is appropriate.  Service of the Sale Notice as provided for in the Sale Motion and this Bidding Procedures Order is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction(s) (if necessary) and the Sale Hearing(s), and no other or further notice is required.

F.      The Debtors' proposed Cure Notice is adequate and reasonably designed to provide notice to contract counterparties of the Debtors' executory contracts and unexpired leases that may be assumed and assigned.

G.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

H.      To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.      All objections to the relief requested in the Sale Motion relating to the Bidding Procedures (and all reservations of rights included in any such objections) that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Bidding Procedures Order.

**Stalking Horse Provisions**

2.      The Debtors are authorized, but not directed, to select one or more bidders to act as Stalking Horse Purchaser (s) and are authorized, but not directed, to enter into Stalking Horse Agreement(s) with such Stalking Horse Purchaser(s).

3.      Mesa Vista Operating, LLC (hereafter, "MVO") is authorized and approved to act as the Stalking Horse Purchaser for the Mesa Vista Assets.  The Debtors and MVO are authorized but not directed to enter into a Stalking Horse Agreement, if necessary, and MVO's Stalking Horse Bid shall be set at no less than $4,500,000; with all funds advanced pursuant to the DIP Facility to be credited towards their bid.

4.      No later than November 21, 2023 (the "Stalking Horse Designation Deadline"), if the Debtors select a Stalking Horse Purchaser for the Masterson Assets and/or the WGU Waterflood Assets, the Debtors shall file with the Court and serve on the Service Parties (defined herein) a notice that contains information regarding the Stalking Horse Purchaser and the Stalking Horse Bid, including any Stalking Horse Protections, and attaches the proposed Stalking Horse Agreement (the "Stalking Horse Selection Notice"); *provided, however*, that the Debtors, in consultation with the Prepetition Lender, may extend the Stalking Horse Designation Deadline.

5.      Parties in interest may file objections ("Stalking Horse Objections") to the designation of the Stalking Horse Purchaser or any of the terms of the Stalking Horse Agreement, including to any of the proposed Stalking Horse Protections, within ten (10) days after service of the Stalking Horse Selection Notice (the "Stalking Horse Objection Deadline"). If a timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures and this Bidding Procedures Order, the proposed designation of the Stalking Horse Purchaser and the Stalking Horse Protections under such Stalking Horse Agreement will not be deemed approved

until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors (in consultation with the Prepetition Lender) or by order of the Court. If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Bid in accordance with the Bidding Procedures and this Bidding Procedures Order, the Stalking Horse Protections contemplated by such Stalking Horse Bid shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline.

6.　　The Stalking Horse Protections are APPROVED and shall be paid in cash when and as set forth in the Stalking Horse Agreement(s) (if any).　The Debtors' obligation to pay the Stalking Horse Protections shall constitute, pursuant to sections 503 and 507 of the Bankruptcy Code, an administrative expense claim against each of the Debtors' bankruptcy estates.　The Stalking Horse Protections payable pursuant to the terms of the Stalking Horse Agreement shall be payable without any further order of this Court.

7.　　The Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

### Bidding Procedures

8.　　The Bidding Procedures attached hereto as **Exhibit 1** are APPROVED and fully incorporated into this Bidding Procedures Order by reference.　The failure to specifically include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety. The Bidding Procedures shall govern all Bids and bidding procedures relating to the Sale of the Purchased Assets.　Any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.　The Debtors are authorized to take any and all

actions necessary or appropriate to implement the Bidding Procedures, including incurring and paying costs and expenses, in accordance with the DIP Order, Final Cash Collateral Order, and Approved Budget.

9.      Any deposits made by a Stalking Horse Purchaser or other bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement.

10.      The Bid Deadline shall be **December 8, 2023, at 5:00 p.m. (prevailing Central Time)**.

11.      The Debtors' Chief Restructuring Officer shall have the right to determine whether a bid is a Qualified Bid and shall notify all Potential Bidders whether they have been designated as a Qualified Bidder, as promptly as practicable after a Potential Bidder delivers the materials required by the Bidding Procedures; *provided*, *however*, that a Stalking Horse Purchaser shall be deemed a Qualified Bidder for all purposes, and a Stalking Horse Bid shall be deemed a Qualified Bid for all purposes in connection with the bidding process, the Auction, and the Sale.  The Debtors shall notify the Prepetition Lender upon a determination that a Bid constitutes a Qualified Bid and promptly provide copies of such Qualified Bid to the Prepetition Lender.

12.      The Auction, if an auction is necessary, shall be held at **10:00 a.m. (prevailing Central Time) on December 13, 2023**, telephonically pursuant to instructions to be provided by the Debtors to parties entitled to attend the Auction at a later date, or such other location or time as shall be timely communicated to any Stalking Horse Purchaser, Qualified Bidder and the Prepetition Lender.  If no Qualified Bid other than the Stalking Horse Bid is received before the Bid Deadline, no Auction shall be conducted, the Stalking Horse Purchaser shall be deemed the

Successful Bidder and the Debtors will proceed to request at the Sale Hearing that the Court approve the Sale in accordance with the Stalking Horse Agreement.

13.    As soon as reasonably practicable after the conclusion of the Auction, but no later than the first business day following the conclusion of the Auction, the Debtors shall file notice of the identity of the Successful Bidder, the Back-Up Bidder, if any, and the respective amounts of such bids, and shall serve such notice by first class United States Mail or email (where available) to: (i) the Debtors' Master Service List; (ii) all contract counterparties to the Debtors' executory contracts and unexpired leases; and (iii) and any party requesting notice pursuant to Bankruptcy Rule 2002.

14.    Objections, if any, to (i) the manner in which the Auction was conducted and selection of the Successful Bidder, or (ii) if the Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to Assumed Executory Contracts, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder must (a) be filed with the Clerk of the Court no later than **December 15, 2023 at 5:00 p.m. (prevailing Central Time)** (the "Auction Objection Deadline"); (b) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; and (c) comply with the Bankruptcy Rules and Bankruptcy Local Rules (any such objection, an "Auction Objection"). Failure to timely or appropriately file an Auction Objection by the Auction Objection Deadline shall be deemed to be consent to the Successful Bidder and the manner in which the Auction was conducted.

15.    If an Auction is conducted, each Qualified Bidder attending shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the

Bankruptcy Code, with respect to the bidding or the Sale.  The Auction shall be recorded or transcribed.

16.     Subject to the terms of the Bidding Procedures, in the event of a competing Qualified Bid, the Stalking Horse Purchaser (if any) will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid all of its claims for Stalking Horse Protections pursuant to section 363(k) of the Bankruptcy Code.

17.     Subject to the terms of the Bidding Procedures, the Debtors shall determine which Qualified Bid is the highest or otherwise best offer for the Purchased Assets, giving effect to the Stalking Horse Protections payable to the Stalking Horse Purchaser (if any), as well as any additional liabilities to be assumed by the relevant Qualified Bidder or Stalking Horse Purchaser and any additional costs which may be imposed on the Debtors.  For purposes of valuing Qualified Bids and determining the Successful Bid(s), the full face amount of a credit bid shall be deemed to have the same value as the equivalent amount of cash.  The Debtors shall notify the respective Stalking Horse Purchaser and the Prepetition Lender promptly upon the selection of the Successful Bid.

18.     The Sale Hearing shall be held before the Honorable United States Bankruptcy Judge Christopher Lopez, at the United States Bankruptcy Court for the Southern District of Texas on **December 20, 2023 at 1:00 p.m. (prevailing Central Time).**  The Sale Hearing may be adjourned by the Debtors, in consultation with the DIP Lender and the Prepetition Lender, without further notice to creditors or parties in interest other than by announcement in open Court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases.  The Successful Bidder shall appear at the Sale Hearing and be prepared to testify, if necessary, in support of the Successful Bid and the Successful Bidder's ability to close in a

timely manner and provide adequate assurance of its future performance under any and all contract(s) and lease(s) to be assumed and assigned as part of the proposed Sale.

## Sale Notice Procedures

20.     The Sale Notice, substantially in the form attached to the Sale Motion, is hereby approved.  The Sale Notice is reasonably calculated to provide sufficient notice to all parties in interest of the Debtors' intent to consummate one or more sale(s) with the Successful Bidder(s) and constitutes adequate notice of the sale.  Additionally, the following Sale Notice procedures are hereby approved:

> The Debtors shall serve the Sale Notice, together with the Bidding Procedures, within five (5) days after the entry of this Bidding Procedures Order, upon all parties on the Debtors' Master Service List, and, for the avoidance of doubt: (a) counsel to any statutory committee appointed in these Chapter 11 Cases; (b) the United States Trustee for the Southern District of Texas; (c) all other parties known to the Debtors who have or may have asserted liens, claims, encumbrances, or interests in or against any of the Purchased Assets; (d) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (e) all of the Debtors' creditors as required by Bankruptcy Rule 2002(a)(2); (f) federal, state, and local taxing authorities; (g) all of the counterparties to the Debtors' executory contracts and unexpired leases; (h) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (i) all Potential Bidders known to have expressed an interest in a transaction with respect to all or a part of the Purchased Assets; and, (j) counsel to the Prepetition Lender and the DIP Lender.

> (i)     Any objections to the relief requested in the Sale Motion as relates to the sale of the Purchased Assets to the Successful Bidder (a "Sale Objection") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than **5:00 p.m. (prevailing Central Time) on December 15, 2023** (the "Sale Objection Deadline"); and (d) be served, so as to be actually received on or before the Sale Objection Deadline by the service parties (the "Service Parties") consisting of: (i) counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Christopher Adams (cadams@okinadams.com) and John Thomas Oldham (joldham@okinadams.com) (ii) counsel to the Prepetition Lender, Hunton Andrews Kurth LLP, Attn: Justin Paget (jpaget@HuntonAK.com) and Jennifer Wuebker (jwuebker@HuntonAk.com) and Munsch Hardt Kopf & Harr, P.C., Attn: John D. Cornwell (jcornwell@munsch.com) and Brenda Funk (bfunk@munsch.com); and (iii) counsel to the DIP Lender, McGinnis Lochridge, LLP, 609 Main St., Suite

2800, Houston, Texas 77002, Attn: Christopher L. Halgren (chalgren@mcginnislaw.com).

(ii)     The failure of any person or entity to file a Sale Objection by the Sale Objection Deadline shall be deemed a consent to the sale of the Purchased Assets to the Stalking Horse Purchaser or other Successful Bidder and the other relief requested in the Sale Motion for purposes of Bankruptcy Code section 363(f). Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of (i) any objection to the Sale Motion; (ii) the sale of the Purchased Assets free and clear of an liens, claims, and encumbrances; and (iii) the Debtors' consummation and performance of the Stalking Horse Agreement(s) or other Asset Purchase Agreement, as applicable.

(iii)    If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

### Cure Notice Procedures

21.    The Cure Notice, substantially in the form attached to the Sale Motion, is hereby approved. The Cure Notice to be provided and the method of service constitutes good, proper, and adequate notice, and is reasonably calculated to provide sufficient notice to all contract counterparties of: (i) the Debtors' intent to assume and assign certain executory contracts and unexpired leases to the Stalking Horse Purchaser or other Successful Bidder, and (ii) the proposed Cure Amount associated with such assumption and assignment. Additionally, the following Cure Notice procedures are hereby approved:

(i)     The Debtors shall cause the Cure Notice to be served to any counterparties to the Debtors' executory contracts and unexpired leases that may be assumed and assigned, as set forth in Schedule 1 attached to the Cure Notice, not later than three (3) business days after entry of this Bidding Procedures Order. The Cure Notice shall provide the counterparties to such executory contracts and unexpired leases with notice of the Cure Amount that the Debtors believe must be cured upon assumption and assignment to the Successful Bidder as required under Bankruptcy Code section 365.

(ii)    Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice or to the Cure Amounts set forth in the Cure Notice (a "Contract Objection"), must: (a) set forth in writing and describe

with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than **5:00 p.m. (prevailing Central Time) on December 8, 2023** (the "Contract Objection Deadline"); and (d) be served, so as to be actually received on or before the Contract Objection Deadline by the Service Parties consisting of: (i) counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Christopher Adams (cadams@okinadams.com) and John Thomas Oldham (joldham@okinadams.com) (ii) counsel to the Prepetition Lender, Hunton Andrews Kurth LLP, Attn: Justin Paget (jpaget@HuntonAK.com) and Jennifer Wuebker (jwuebker@HuntonAk.com) and Munsch Hardt Kopf & Harr, P.C., Attn: John D. Cornwell (jcornwell@munsch.com) and Brenda Funk (bfunk@munsch.com); and (iii) counsel to the DIP Lender, McGinnis Lochridge, LLP, 609 Main St., Suite 2800, Houston, Texas 77002, Attn: Christopher L. Halgren (chalgren@mcginnislaw.com).

(iii)    If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in the Cure Notice will be binding upon the contract counterparty, and all parties in interest, for all purposes in the Chapter 11 Cases and otherwise. All such counterparties to those executory contracts and unexpired leases on Schedule 1 of the Cure Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases and the Cure Amounts identified in the Cure Notice with respect to such executory contracts and unexpired leases shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults thereunder if the Successful Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtors and assigned to it; (b) be deemed to have consented to the assumption and assignment if the Stalking Horse Purchaser or other Successful Bidder designates such contract or lease as an Assumed Executory Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Purchaser, or other Successful Bidder, as applicable, that any additional amounts are due, other defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment.

(iv)    In the event that the Debtors and the non-debtor counterparty cannot resolve the Cure Objection, the Debtors shall segregate the disputed Cure Amount (each, a "Disputed Cure Amount") pending the resolution of such dispute by the Court or mutual agreement of the parties; *provided*, *however*, that the Debtors shall not be required to segregate any Disputed Cure Amount if the applicable Stalking Horse Agreement or Asset Purchase Agreement provides for payment of Cure Amounts by the Stalking Horse Purchaser(s) or Successful Bidder.

(v)      If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice timely files a Contract Objection, whether based on Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

(vi)     If at any time after the Cure Notice is served (but prior to the sale pursuant to any Stalking Horse Agreement or other Asset Purchase Agreement) the Debtors: (a) amend Schedule 1 to the Cure Notice and include additional executory contracts or unexpired leases; or (b) receive notice from the Stalking Horse Purchaser or Successful Bidder that additional prepetition executory contracts and or unexpired leases are to be designated as Assumed Executory Contracts under the Stalking Horse Agreement or other Asset Purchase Agreement, then the Debtors shall serve a supplemental cure notice (a "Supplemental Cure Notice") by first class mail, facsimile, electronic transmission, or overnight mail on the contract counterparty (and its attorney, if known) to each such contract (a "Previously Omitted Contract") within two (2) business days of the amendment to the Cure Notice, or the receipt of notice of designation as an Assumed Executory Contract. Each Supplemental Cure Notice shall set forth the following: (i) the name and address of the contract counterparty; (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and the Stalking Horse Purchaser or Successful Bidder to withdraw such request for assumption and assignment of the Assumed Executory Contract prior to closing); (iii) identification of the Assumed Executory Contract; and (iv) the Cure Amount, if any.

(vii)    Unless the contract counterparty to the Previously Omitted Contract properly files a Contract Objection to the Supplemental Cure Notice within fourteen (14) days of service of the Supplemental Cure Notice, the Debtors shall obtain an order of the Court fixing the Cure Amounts and approving the assumption and assignment of the Previously Omitted Contract as an Assumed Executory Contract. If a Contract Objection is timely filed and served with respect to a Previously Omitted Contract, and the relevant parties are unable to resolve the Contract Objection, such Contract Objection will be adjudicated at the Sale Hearing or, if the Sale Hearing date has passed, at such other date and time as may be fixed by the Court after the Designation Deadline.

(viii)   For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 of the Cure Notice shall not obligate the Debtors to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtors, Stalking Horse Purchaser(s), or other Successful Bidder to modify the list of Assumed Executory Contracts, including to remove any contracts or leases from such list, are expressly reserved.  Only those executory contracts and unexpired leases designated as Assumed Executory Contracts at closing will be assumed and assigned to the Stalking Horse Purchaser or other Successful Bidder, if applicable.

22.     The Successful Bidder(s) may designate additional contracts and leases for assumption and assignment at any time up until the date of the closing of the Sale.

23.     If any counterparty to an Assumed Executory Contract to be assumed by the Stalking Horse Purchaser or Successful Bidder objects on adequate assurance of future performance grounds, to the assumption and assignment of its Assumed Executory Contract by the Stalking Horse Purchaser or Successful Bidder, as applicable, such counterparty must file and serve such Adequate Assurance Objection so as to be received by the Service Parties by no later than (the "Adequate Assurance Objection Deadline") the later of: (i) the date that is ten (10) days after service of the Stalking Horse Selection Notice, or (ii) if such Adequate Assurance Objection relates to a Successful Bidder that is not a Stalking Horse Purchaser, by **5:00 p.m. (prevailing Central Time) on December 15, 2023**.  The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing (or a separate hearing if the Assumed Executory Contract is designated to be assumed and assigned after the Sale Hearing).  Any counterparty failing to timely file an Adequate Assurance Objection shall be forever barred from objecting to assumption by the Debtors and assignment to the Successful Bidder of the relevant Assumed Executory Contract on grounds of adequate assurance of future performance.

24.     If an executory contract or unexpired lease is assumed and assigned pursuant to the Sale Order or other order of the Court, unless otherwise agreed by the Debtors, Successful Bidder and a counterparty to an Assumed Executory Contract, the counterparty to such Assumed Executory Contract shall receive the applicable Cure Amount, if any (except for Disputed Cure Amounts), no later than five (5) business days following the closing of the Sale, with payment to

14

be made pursuant to the terms of the Successful Bidder's Asset Purchase Agreement.  Except to the extent otherwise provided in the Successful Bidder's Asset Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising under or in connection with the Assumed Executory Contracts after the assumption and assignment thereof pursuant to section 365(k) of the Bankruptcy Code.

25.     Notwithstanding any provision in this Bidding Procedures Order or the Bidding Procedures to the contrary, this Bidding Procedures Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Assumed Executory Contract, including those relating to the Cure Amounts or the provision of adequate assurance of future performance.  No Assumed Executory Contract shall be deemed assumed or assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of such Assumed Executory Contract, (b) the date the Sale is closed or (c) the date the Cure Amount is paid.  The Successful Bidder shall have no rights in and to any particular Assumed Executory Contract until such time as the particular Assumed Executory Contract is assumed and assigned to the Successful Bidder.

26.     The inclusion of a contract or lease and related Cure Amount on a Cure Notice or Supplemental Cure Notice shall not constitute or be deemed to be a determination or admission by the Debtors, a Stalking Horse Purchaser, Successful Bidder, or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost constitutes a claim against the Debtors in such amount (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims and causes of action with respect to each contract or lease listed on the Cure Notice or any Supplemental Cure Notice.

## Miscellaneous Provisions

27.     Prior to service, the Debtors may make final, non-substantive edits to the Bidding Procedures, Sale Notice, and Cure Notice consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding relevant dates and deadlines, and adding revisions announced on the record at the Bidding Procedures Hearing, each of which shall be deemed approved by this Bidding Procedures Order without further notice or hearing.

28.     The Debtors are authorized to conduct the Sale(s) without the necessity of complying with any state or local bulk transfer laws or requirements.

29.     In the event that there is a conflict between this Bidding Procedures Order or the Bidding Procedures, on the one hand, and the Sale Motion, an Asset Purchase Agreement, or a Stalking Horse Agreement, on the other hand, this Bidding Procedures Order and the Bidding Procedures shall control and govern, and this Bidding Procedures Order shall control in the event of any conflict with the Bidding Procedures.

30.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Bidding Procedures Order.

32.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable.

Signed:  November 21, 2023

Christopher Lopez
United States Bankruptcy Judge

16

**<u>Exhibit 1</u>**

**(Bidding Procedures)**

## POLARIS OPERATING, LLC, *ET AL.* - BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale of certain tangible and intangible assets (the "Purchased Assets") of the Debtors (as defined below) that own the Purchased Assets (in such capacity, the "Sellers"), in connection with the Debtors' jointly administered chapter 11 cases of Polaris Operating, LLC *et al.* (each a "Debtor" and collectively, the "Debtors") pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), lead Case No. 23-32810.

On November 21, 2023, the Bankruptcy Court entered an Order (the "Bidding Procedures Order") [ECF # ●], which, among other things, authorized the Debtors to solicit bids and approved these Bidding Procedures, which are to be employed by the Debtors in connection with the proposed sale or sales of, or acquisition transactions of all or substantially all of, the Debtors' assets and other related interests, free and clear of all liens, claims, encumbrances and other interests (collectively, the "Encumbrances"), other than those Encumbrances permitted by a Stalking Horse Agreement or Asset Purchase Agreement (as defined below) (any and each such transaction, a "Sale"), on an AS-IS, WHERE-IS WITH ALL FAULTS BASIS.

### KEY DATES

| Date and Time | Applicable Deadline |
|---|---|
| November 21, 2023 at 5:00 p.m. | Stalking Horse Designation Deadline |
| Ten (10) days after service of a Stalking Horse Selection Notice | Stalking Horse Objection Deadline |
| December 15, 2023 at 5:00 p.m. | Adequate Assurance Objection Deadline |
| December 8, 2023 at 5:00 p.m. | Contract Objection Deadline |
| December 15, 2023 at 5:00 p.m. | Sale Objection Deadline |
| December 8, 2023 at 5:00 p.m. | Bid Deadline |
| December 13, 2023 at 10:00 a.m. | Auction Date |
| December 15, 2023 at 5:00 p.m. | Auction Objection Deadline |
| December 20, 2023 at [●] | Sale Hearing |

### STALKING HORSE PURCHASER AND STALKING HORSE PROTECTIONS

1.      The Debtors have been authorized, but are not obligated, in an exercise of their business judgment and in consultation with the Prepetition Lender[1] to: (i) designate one or more bidders to act as stalking horse bidders in connection with each Sale (each, a "Stalking Horse Purchaser," and the bid of a Stalking Horse Purchaser a "Stalking Horse Bid"), with the consent of the Prepetition Lender, and enter into purchase agreements with respect to a Sale with such Stalking Horse Purchaser(s) (each, a "Stalking Horse Agreement") and (ii) in connection with any Stalking Horse Agreement with a Stalking Horse Purchaser, (a) provide a breakup fee (the "Breakup Fee") and (b) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement"), and/or (c) agree to provide minimum overbid protections, all as reasonably acceptable to the Debtors, after consultation with the Prepetition Lender, and as otherwise approved by the Bankruptcy Court (together with the Breakup Fee and Expense Reimbursement, the "Stalking Horse Protections"); *provided*, *however*, that the aggregate amount of Stalking Horse Protections that may be paid to any Stalking Horse Purchaser shall not exceed three percent (3%) percent of the Stalking Horse Purchaser's proposed purchase price and shall be payable

---

[1] "Prepetition Lender" shall mean Vista Bank or any successor in interest.

only from the cash proceeds from a Sale with another Qualified Bidder which is designated the Successful Bidder.  Subject to the below, no later than one (1) business day after the selection of a Stalking Horse Purchaser, the Debtors shall file a Stalking Horse Selection Notice (as defined below).

2.     The Debtors will provide notice of each such Stalking Horse Purchaser, the Stalking Horse Protections (including the amount and calculation thereof) and the Stalking Horse Agreement as outlined in the Bidding Procedures Order (the "Stalking Horse Selection Notice").  Parties in interest may file an objection (a "Stalking Horse Objection") to the designation of the Stalking Horse Purchaser or any of the terms of the Stalking Horse Agreement, including to any of the proposed Stalking Horse Protections, within ten (10) days after service of the Stalking Horse Selection Notice (the "Stalking Horse Objection Deadline").  If a timely Stalking Horse Objection is filed and served in accordance with these Bidding Procedures and the Bidding Procedures Order, the proposed designation of the Stalking Horse Purchaser and the Stalking Horse Protections under such Stalking Horse Agreement will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors (in consultation with the Prepetition Lender) or by order of the Bankruptcy Court.  If no timely Stalking Horse Objection is filed and served with respect to the designation of the Stalking Horse Purchaser or the proposed Stalking Horse Protections, in accordance with these Bidding Procedures and the Bidding Procedures Order, the Stalking Horse Protections contemplated by such Stalking Horse Bid shall be deemed approved without further order of the Bankruptcy Court upon the expiration of the Stalking Horse Objection Deadline.

3.     The Debtors have agreed that their obligation to pay the Stalking Horse Protections pursuant to the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement, and, to the extent owed by the Debtors, constitute an administrative expense claim under sections 503(b) and 507 of the Bankruptcy Code against the Debtors, and payable in accordance with the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures Order. The Stalking Horse Protections are not payable in the event the Stalking Horse Purchaser breaches the Stalking Horse Agreement or otherwise fails to consummate the Stalking Horse Agreement and/or related Sale.  The Debtors' expressly reserve all rights, claims, defenses and offsets they may otherwise have in this regard.

## ASSETS TO BE SOLD AND ASSET PURCHASE AGREEMENT

4.     The Debtors seek to consummate one or more Sales of the Purchased Assets. The Debtors will consider (1) bids to acquire substantially all of the Debtors' Assets (a "Whole Company Bid"), and/or (2) separate bids to acquire (x) the Mesa Vista Assets and/or operations (a "Mesa Vista Only Bid"), (y) the Masterson Assets and/or operations (a "Masterson Only Bid"), or (z) the WGU Waterflood Project Assets (a "WGU Only Bid" and together with any Whole Company Bid(s), Mesa Vista Only Bid, and/or Masterson Only Bid, the "Bids"), to the extent that the consummation of such Sale(s) maximizes value for stakeholders and can be accomplished efficiently. The Debtors, in consultation with the Prepetition Lender, have drafted a form of asset purchase agreement (together with all ancillary documents and agreements, the "Asset Purchase Agreement"), for parties interested in acquiring the Purchased Assets.   The Debtors intend to provide copies of the form of Asset Purchase Agreement to all parties who express interest in submitting a Bid and will also make such form of Asset Purchase Agreement available in the electronic data room established by the Debtors in connection with their Sale process.

5.     The Sale of the Purchased Assets is on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents or estates, except to the extent set forth in the Asset Purchase Agreement of the Successful Bidder (as defined herein) as approved by the Bankruptcy Court (or in the Stalking Horse Agreement, as applicable).  Pursuant to the form of Asset Purchase Agreement, the Successful Bidder shall acquire the Purchased Assets free and clear of any and all Encumbrances, subject to certain other conditions and except as otherwise provided in an Asset Purchase

Agreement (or Stalking Horse Agreement, as applicable), with such Encumbrances to attach solely to the net proceeds of the Sale with the same validity and priority as such Encumbrances applied against the Purchased Assets prior to the Sale.

## THE BIDDING PROCEDURES

### A.   Provisions Governing Qualifications of Bidders

6.     Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person, other than a Stalking Horse Purchaser or the Prepetition Lender (which parties shall be deemed Qualified Bidders without need to comply with the qualification process below), who wishes to participate in the bidding process (each, a "Potential Bidder") must deliver the following to the Bid Notice Parties (as defined below):

> (i)   a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such Bid; and

> (ii)  an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Debtors.

7.     As promptly as practicable after a person delivers all of the materials required above, and after consultation with the Prepetition Lender, the Debtors will determine and will notify such Potential Bidder if it qualifies as a bidder (each a "Qualified Bidder").

8.     Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchaser(s) shall be considered a Qualified Bidder and any Stalking Horse Agreement shall be a Qualified Bid (as defined below).

9.     Mesa Vista Operating, LLC shall be deemed a "Qualified Bidder" and "Stalking Horse Purchaser" of the Mesa Vista Assets for the purposes of submitting a bid (which such bid shall be deemed a "Qualified Bid") of $4,500,000, comprised of (i) a credit bid (or consensual assignment) of all of the secured claims under the DIP Documents and DIP Facility (each as defined in the DIP Order) (subject to satisfaction of any senior secured claims, to the extent applicable); and, (ii) cash payable at closing.

### B.   Due Diligence

10.    The Debtors, with the assistance of their investment banker and other advisors, will provide any Potential Bidder such due diligence access or additional information as the Debtors, in their reasonable discretion, deem appropriate, which may include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information.  The due diligence period will extend through and include the Auction.  Unless otherwise deemed reasonably appropriate by the Debtors after consultation with the Prepetition Lender, the Debtors and their representatives and advisors shall not be obligated to furnish any due diligence information after the Auction.  Diligence inquiries should be made to the Debtors' investment banker using the contact information below:

**SP Securities LLC**
Attn: Joseph Mims
Tel: 713.542.8004
Email: Jmims@onerangersolutions.com
Address: 1717 St. James Place, Ste. 250, Houston, Texas 77056

**C.**      **Bid Deadline**

11.      A Qualified Bidder that desires to make a Bid will deliver written copies of its Bid via email to the following parties (collectively, the "Bid Notice Parties"): (i) the Debtors, by and through their Chief Restructuring Officer, Attn: Douglas J. Brickley (dbrickley@stout.com); (ii) investment banker to the Debtors, SP Securities LLC, Attn: Joseph Mims (jmims@onerangersolutions.com); and (iii) counsel for the Debtors, Okin Adams LLP Attn: Christopher Adams (cadams@okinadams.com) and John Thomas Oldham (joldham@okinadams.com).

12.      Bids must be actually received by the Bid Notice Parties by a date no later than **5:00 p.m. (prevailing Central Time) on December 8, 2023** (the "Bid Deadline").  The Bid Deadline may be extended by the Debtors in consultation with the Prepetition Lender.

**D.**      **Credit Bid Notification**

13.      To the extent that the Prepetition Lender, in its capacity as Prepetition Secured Lender, desires to submit a competing credit bid for the Purchased Assets, the Prepetition Lender shall notify the Debtors in writing of its intention to potentially credit bid no later than the Bid Deadline (the "Credit Bid Notification").  If the Prepetition Lender indicates in a Credit Bid Notification that it intends to credit bid at the Auction, the Prepetition Lender shall not receive the consent/consultation rights with respect to determination of Qualified Bids, Qualified Bidders, the Auction(s), or the selection of the Successful Bidder or Back-Up Bidder, each as defined and more fully set forth below; *provided, however*, that the Prepetition Lender shall retain the consent rights and consultation rights set forth in subparagraph (l) of paragraph 15 and paragraph 28 below.  In the event the Prepetition Lender subsequently revokes the Credit Bid Notification in writing and notifies the Debtors that it no longer intends to credit bid, then it shall again be afforded the consent rights and consultation rights described in these Bidding Procedures.

14.      Notwithstanding the foregoing or anything herein to the contrary, unless otherwise ordered by the Bankruptcy Court for cause, the Prepetition Lender may submit credit bid(s) of all or a portion of its respective secured claims any time after the Bid Deadline or during the Auction, so long as (i) such credit bid shall only serve as a "back-up" bid to the Stalking Horse Bid or such other Successful Bid, if applicable; (ii) the Prepetition Lender shall provide an Asset Purchase Agreement to the Debtors no later than one (1) business day after the Bid Deadline; and (iii) such credit bid shall remain irrevocable until the closing of the Sale to the Stalking Horse Purchaser or such other Successful Bidder, if applicable (any such credit bid, a "Credit Bid Back-up Bid" and such submitting lender, the "Credit Bid Back-up Bidder").  Other than with respect to the Asset Purchase Agreement, the Credit Bid Back-up Bid shall not be subject to the requirements herein for a Qualified Bid or a Back-up Bid.  For the avoidance of doubt, the Credit Bid Back-up Bidder cannot be designated as the Back-up Bidder unless such party consents to such designation.

**E.**      **Provisions Governing Qualified Bids**

15.      A Bid will be considered a "Qualified Bid" only if the Bid is submitted by a Qualified Bidder and complies with all of the following:

4

a.  it states that the applicable Qualified Bidder offers to purchase, in cash or through a credit bid, some or all of the Purchased Assets upon the terms and conditions that the Debtors reasonably determine are no less favorable to the Debtors than those set forth in the Asset Purchase Agreement or the Stalking Horse Agreement (if any);

b.  it specifies the assets that are included in the Bid and, to the extent a Stalking Horse Purchaser is designated, states that such Qualified Bidder offers to purchase those assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

c.  it includes a signed writing stating that the Qualified Bidder's offer is binding on such Qualified Bidder and irrevocable until the selection of the Successful Bidder, *provided*, *however*, that if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below) its offer shall remain irrevocable until the later of (i) the closing of the Sale to the Successful Bidder or the Back-Up Bidder, and (ii) the date that is thirty (30) days after the Sale Hearing;

d.  it includes written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including due diligence or financing contingencies, and that all necessary internal and shareholder approvals have been obtained prior to the submission of the Bid;

e.  it includes a duly authorized and executed copy of a purchase agreement, based on the Asset Purchase Agreement or the Stalking Horse Agreement (if one exists), including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Asset Purchase Agreement or the Stalking Horse Agreement (if one exists) and the proposed order for approval of the Sale by the Bankruptcy Court, and includes a copy of a redline reflecting all of the changes to the Asset Purchase Agreement or the Stalking Horse Agreement (if any);

f.  it includes confirmation that the Bid is not contingent upon such Qualified Bidder obtaining financing and includes financial statements or other written evidence, including (if applicable) a firm, irrevocable commitment for financing, establishing the ability of the Qualified Bidder to consummate the proposed Sale and pay the Purchase Price in cash, such as will allow the Debtors, in consultation with the Prepetition Lender, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Asset Purchase Agreement, including payment of the Purchase Price and providing adequate assurance of future performance under all contracts to be assumed and assigned in the Sale;

g.  it provides for the repayment of all other costs payable by such Qualified Bidder, simultaneously with the closing of the Sale, including the Stalking Horse Protections;

h.  in the event that there is a Stalking Horse Purchaser, and the Qualified Bidder wishes to bid on the same assets that are included in the Stalking Horse Agreement, it has a value to the Debtors, determined in the Debtors' reasonable business judgment that is greater than or equal to the sum of the value offered under the Stalking Horse Agreement, plus (i) the aggregate amount of the Stalking Horse Protections (if there is a Stalking Horse Bid), plus (ii) $250,000 (the "Minimum Initial Overbid Amount");

i.    it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related Cure Amounts and the provision of adequate assurance of future performance to the counterparties to such Assumed Executory Contracts;

j.    it includes an acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its Bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Asset Purchase Agreement; and (iv) with the exception of any Stalking Horse Purchaser, is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its Bid;

k.    it includes evidence, in form and substance reasonably satisfactory to the Debtors of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement;

l.    it is accompanied by a good faith deposit (a "<u>Good Faith Deposit</u>") in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to ten percent (10%) of the Purchase Price, plus, in the event that a Stalking Horse Bid has been submitted, (i) the aggregate amount of the Stalking Horse Protections and (ii) $250,000; *provided that* (i) any Qualified Bidder submitting a Bid with a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit and (ii) the Debtors, in consultation with the Prepetition Lender, may alter the Good Faith Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Bankruptcy Court; *provided further*, that no Good Faith Deposit shall be required in connection with any credit bid submitted by the Prepetition Lender;

m.    it contains full disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, as well as disclose the organizational form and business conducted by each entity;

n.    it contains a reasonable description of how the Qualified Bidder intends to treat current employees of the Sellers;

o.    it contains a commitment to close the Sale of the Purchased Assets by January 15, 2024;

p.    it contains such other information as may be reasonably requested by the Debtors, in consultation with the Debtors' investment banker; and

q.  it contains, with specificity, identification of the Purchased Assets that bid is for, and to the extent the bid is for more than any one group of assets, a breakdown in the allocation of bid amount for each of the different groups of assets for which the bid is comprised; and

r.  it is received prior to the Bid Deadline.

16.  The Debtors shall have the discretion to determine whether a Bid meets the above requirements and is therefore a Qualified Bid.  Promptly upon determining that a Bid (other than a Stalking Horse Bid) constitutes a Qualified Bid, the Debtors shall notify the Stalking Horse Purchaser and the Prepetition Lender, in writing of such determination and will notify each Qualified Bidder that has submitted a Bid (other than the Stalking Horse Purchaser), whether such Qualified Bidder's Bid constitutes a Qualified Bid promptly after such determination has been made; *provided*, *however*, that such notification shall not be given later than one (1) calendar day following the expiration of the Bid Deadline.  Only those Qualified Bidders who have submitted Qualified Bids, as determined by the Debtors, in consultation with the Prepetition Lender, shall be deemed "Qualified Bidders" for purposes of these Bidding Procedures and the Auction.

17.  Notwithstanding the foregoing, any Stalking Horse Purchaser shall be deemed a Qualified Bidder, and the Stalking Horse Agreement will be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale without compliance with the above enumerated requirements.

**F.    Evaluation of Competing Bids**

18.  A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of the Purchase Price provided by such Qualified Bid, (2) the risks and timing associated with consummating such Qualified Bid, (3) any proposed revisions to the Asset Purchase Agreement and/or the Stalking Horse Agreement and/or the proposed Sale Order, (4) the ability of the Qualified Bidder to obtain appropriate regulatory approvals, and (5) any other factors deemed relevant by the Debtors, in consultation with their investment banker and the Prepetition Lender, as necessary.  For purposes of such valuation, the full face amount of a credit bid shall be deemed to have the same value as the equivalent amount of cash.  The Debtors shall treat comparable credit bids, cash bids, and bids contemplating the assumption of liabilities as equivalent and no credit bid shall be considered inferior to a comparable cash bid or bid contemplating the assumption of liabilities because it is a credit bid.

**G.    No Qualified Bids**

19.  If the Debtors do not receive any Qualified Bids, other than the Stalking Horse Agreement (if any), the Debtors will not hold an auction and the Stalking Horse Purchaser will be named the Successful Bidder upon the expiration of the Bid Deadline.

**H.    Auction Process**

20.  If the Debtors receive one or more Qualified Bids in addition to a Stalking Horse Bid, or if there is no Stalking Horse Bid, the Debtors will conduct an auction of the Assets (the "Auction"), which shall be on **December 13, 2023, at 10:00 a.m. (prevailing Central Time)** [telephonically pursuant to instructions to be provided by the Debtors to parties entitled to attend the Auction at a later date], or such other location or time as shall be timely communicated. At the start of the Auction, the Debtors shall describe the material terms of the Starting Bid(s) (as defined below) for the Purchased Assets on the record. The Debtors shall maintain a written transcript of the Auction and all bids made and announced at the

Auction, if any, including the Starting Bid, any and all Subsequent Bids, and the Successful Bid. The Auction, which shall be recorded or transcribed, shall be held in accordance with the following procedures:

a. only the Stalking Horse Purchaser, if any, and any other Qualified Bidders who have timely submitted Qualified Bids (and their counsel) will be entitled to attend and submit competing Bids (*i.e.*, bids other than Credit Bid Back-up Bids) at the Auction; *provided that*, the Prepetition Lender may attend the Auction regardless of whether it intends to submit a Bid for any of the Purchased Assets;

b. the Stalking Horse Purchaser will, notwithstanding the elements of the Purchase Price set forth in the Stalking Horse Agreement, be entitled to make subsequent Bids for all or substantially all or any combination of the Purchased Assets comprised of further credit bids, cash, additional or different consideration of any type, or any combination of the foregoing;

c. each Qualified Bidder participating in the Auction shall be required to confirm on the record at the Auction (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Back-up Bidder, and (c) the Qualified Bidder (other than the Credit Bid Back-up Bidder) agrees to serve as the Back-up Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid;

d. at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction. At least one (1) business day prior to the Auction, the Debtors will provide copies of the Qualified Bid, or combination of Qualified Bids, which the Debtors believe, after consultation with the Prepetition Lender (which may be present at the Auction), is the highest or otherwise best offer for the Purchased Assets (the "Starting Bid") to the Stalking Horse Purchaser, if any, and counsel to the Prepetition Lender.

e. the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f. bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "Subsequent Bid") providing a net value to the Debtors' estates of at least $250,000 above the prior Bid. After the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Prepetition Lender, shall announce the Bid (and the value of such Bid) that they believe to be the highest or otherwise best Bid (each, the "Leading Bid").

g. A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

h. Except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by the Stalking Horse Purchaser), the Debtors shall give effect to the Stalking Horse Protections as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Debtors.

i. The Debtors may accept Bids for all or substantially all of the Purchased Assets.

j. The Debtors explicitly reserve the right, in their business judgment and after consultation with the Prepetition Lender, to exercise their discretion in conducting the Auction (in a manner that is not inconsistent with the Bidding Procedures, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith), including (x) modifying bidding increments as necessary to achieve the highest and best Bids for the Purchased Assets, and (y) determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders, the Debtors, and/or the Prepetition Lender, as applicable.

**I.** **Selection of Successful Bid**

21. Prior to the conclusion of the Auction, the Debtors, in consultation with the Prepetition Lender, will review and evaluate each Qualified Bid submitted at the Auction (including by the Stalking Horse Purchaser) in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid(s), collectively, the "Successful Bidder"), and communicate to the Stalking Horse Purchaser and the other Auction participants the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Debtors, in consultation with the Prepetition Lender, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

22. Other than the Stalking Horse Purchaser, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid, as determined by the Debtors, in consultation with the Prepetition Lender, will be required to serve as a back-up bidder (the "Back-Up Bidder") and keep its bid open and irrevocable until the later to occur of thirty (30) days after the Sale Hearing and closing on the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Sale, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized and directed to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court. In no event shall the Stalking Horse Purchaser be the Back-Up Bidder.

23. Within two (2) business days after conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents necessary to consummate the Successful Bid. Within one (1) business day after conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder and the Back-Up Bidder.

24. The Debtors will sell the Purchased Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the Sale Hearing.

**J.** **Return of Deposits**

25. All Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

26.     The Stalking Horse Protections payable to any Stalking Horse Purchaser shall be paid not later than three (3) business days after the closing of the Sale with the Successful Bidder for the Purchased Assets bid upon by the Stalking Horse Purchaser from the proceeds of such transaction.

## SALE HEARING

27.     The Debtors will seek entry of one or more Sale Order(s) from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on **December 20, 2023 at [____] (prevailing Central Time)**, subject to the availability of the Bankruptcy Court, to approve and authorize the Sale to the Successful Bidder(s) and/or Stocking Horse Purchaser(s) on the terms and conditions memorialized in the applicable Asset Purchase Agreement(s) or Stalking Horse Agreement(s).

## RESERVATION OF RIGHTS

28.     The Debtors reserve the right, in their reasonable business judgment and after consultation with the Prepetition Lender, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors, the Qualified Bidders and the Prepetition Lender, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Prepetition Lender with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Prepetition Lender, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

29.     The Debtors, DIP Lender, and Prepetition Lender agree that in the event of any dispute regarding the Sale process outlined in these Bidding Procedures: (i) any such party may seek an emergency hearing requesting that the Bankruptcy Court resolve such dispute; and (ii) the other party shall consent to such request for an emergency hearing.

**Schedule 1**
Polaris Operating, LLC, *et al*.
Executory Contracts and Unexpired Leases

| Debtor Party | Contract Counterparty | Cure Amount | Description | Term / Expiration | Address 1 | Address 2 | City | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|---|
| Polaris Operating, LLC | Farmout Agreement Longboat Energy LLC | $ - | Farm Out Agreement | | 1560 E. 21st Street | Suite 300 | Tulsa | OK | 74114 |
| Polaris Operating, LLC | JACX Rock Creek LLC | $ - | Contract | April 30, 2023 and continues month to month thereafter | 5001 LBJ Freeway | Suite 300 | Dallas | TX | 75244 |
| NAP I, LLC | Southwest Energy, L.P. | $ - | Contract | 2/28/2027 | 3900 Essex Lane | Suite 610 | Houston | TX | 77027 |
| Polaris Operating, LLC | Valero Marketing and Supply Co. | $ - | Contract | | P.O. Box 696000 | | San Antonio | TX | 78269 |
| Polaris Operating, LLC | Viking Bond Service Inc. | $ - | Surety Bond | Effective September 1, 2022 with term of 1 year 3 months | PO Box 41460 | | Phoenix | AZ | 85080 |
| Polaris Operating, LLC | BALTERRA ENERGY LLC | $ 2,850.00 | Contract | | PO BOX 888 | | KATY | TX | 77492 |
| Polaris Operating, LLC | BLUE DUCK ENERGY MVR LLC | $ 3,349.54 | Joint Operating Agreement | | PO BOX 601695 | | DALLAS | TX | 75360 |
| CCCB Energy Partners, LLC | BP ENERGY CO | $ - | Contract | | 201 HELIOS WAY | | HOUSTON | TX | 77079 |
| Polaris Operating, LLC | CORLENA OIL CO | $ - | Joint Operating Agreement | | 619 S TYLER STE 210 | | AMARILLO | TX | 79101 |
| NAP I, LLC | ETC TEXAS PIPELINE LTD (MDC) | $ - | Contract | 2/28/2027 | 8111 Westchester Dr. | Suite 600 | Dallas | TX | 75225 |
| Polaris Operating, LLC | LUTHER PRESTON CENTER, LLC | $ 45,071.24 | Office Lease | 11/30/2025 | 5944 LUTHER LN STE 1000 | | DALLAS | TX | 75225 |
| Polaris Operating, LLC | NOVA COMPRESSION LLC | $ 342,272.77 | Contract | Effective 11/1/2022 with 24 month term | 2500 Woodbine Drive | | Kilgore | TX | 75662 |
| Polaris Operating, LLC | PICKFORD INVESTMENTS LLC | $ - | Joint Operating Agreement | | 1437 S BOULDER | STE 160 | TULSA | OK | 74119 |
| Polaris Operating, LLC | Presidio Petroleum | $ - | Joint Operating Agreement | | 500 W 7th Street | Suite 803 | Fort Worth | TX | 76102 |
| Cottonwood Gas Gathering, LLC | DCP Operating Company, LP | $ - | Gas Purchase Contract | 4/30/2023, and continues month to month thereafter | 370 17th Street | Suite 2500 | Denver | CO | 80202 |